GOLDEN GATE MFG. CO. v. NEWARK FAUCET CO.

(Circuit Court, D. New Jersey. July 20, 1903.)

1. PATENTS—VALIDITY AND INFRINGEMENT—METHOD AND DEVICES FOR RACKING
BEER.

The Mussell patent, No. 331,252, for a method of filling casks or kegs with beer or other carbonated liquid, was anticipated by the English patent to Russell, No. 4,083 of 1816, and the Matthews patent, No. 260,-766, relating to a method of charging soda fountains; and the Mussell patents, Nos. 331,251 and 333,081, and the Savage patent, No. 537,939, all for mechanical devices for practicing such method, are identical with the device of the Russell patent in principle of construction, and must be strictly limited to the particular construction of parts shown and described. As so limited by the prior art, such patents *held* not infringed.

In Equity. Suit for infringement of letters patent Nos. 331,251, 331,252, and 333,081, granted to Christoph Mussell November 24, 1885, and December 22, 1885, respectively, and No. 537,939, granted to W. C. and Granville L. Savage April 23, 1895, all relating to a method and devices for filling kegs with beer. On final hearing.

Wm. B. Greeley and Wm. A. Redding, for complainant.

Edwin H. Brown, for defendant.

KIRKPATRICK, District Judge. The complainant in this suit charges the defendant with infringement of United States patents Nos. 331,251 and 331,252, granted to Christoph Mussell November 24, 1885, and No. 333,081, granted December 22, 1885, and also patent No. 537,939, granted April 23, 1895, to W. C. Savage and Granville L. Savage. All of these patents relate to racking, or the filling of kegs and other vessels with beer or other carbonated liquids. Patents Nos. 331,251 and 333,081, to Mussell, and No. 537,939, to Savage, are what are known as "device patents," while patent No. 331,252 is a patent for a mechanical method. Proofs of infringement are restricted to claim No. 5 of patent No. 331,251, to claim 1 of patent No. 333,081, to claim 1 of patent No. 331,252, and the four claims of patent No. 537,939.

It seems apparent, from an examination of the evidence, and study of the art of racking beer, that for a long time it had been considered to be a most desirable thing that a cask or the keg, when prepared for shipment, should be completely filled with the beer, so that in its handling for delivery to the market customer there should be the minimum amount of agitation of the beer in the cask or keg. It was found that if the cask were not completely filled, but contained a portion of froth or foam upon the surface of the liquid, the gas contained in the body of the beer would, by agitation, escape to that space, filled by foam, and thus destroy the quality of the beer, and as a result the beer would become what is known to the trade as "stale" or "dead," and therefore unsalable. Brewers and manufacturers had sought and tried various means to avoid this loss; and to permit beer to be shipped, handled, and kept without becoming stale, various processes and devices for filling the casks or kegs had been patented and adopted. Among those patents resulting from these attempts

were those granted to Mussell, upon which, in connection with that granted to Savage, the complainant in this case relies.

The Mussell patent, No. 331,251, claim 5, alleged to be infringed, reads as follows:

"A filling and supply head for beer, and a filling and supply head for air, both located at different points to communicate with the vessel to be filled, and both acting simultaneously to supply beer and air to a keg or other receptacle, substantially as and for the purpose specified."

This seems, from the record, to be the first patent showing what Mussell conceived to be the device which would remedy the defects in the then known processes of racking beer. In view of the state of the art at the time of granting the patent 331,251 to Mussell, I am of the opinion that it cannot be considered a pioneer in the art to which it applies, and that its claims, and those of the subsequent patents in suit granted to Mussell, must be construed narrowly, and limited in their scope to such an extent as the prior art required. The English patent No. 4,083, granted to William Russell, and bearing date November 19, 1816, is in the same art and class, and for the same purposes and uses, as the Mussell and Savage patents. It covers and contemplates substantially everything involved in the complainant's device patents in suit. Without describing in detail the device set out in the Russell patent, but by construing it in comparison with claim 1 of the earliest Mussell patent in suit, we find there embodied all the elements set forth in the claim of the early Mussell patent, and find them adapted to and specified for the same uses as the like elements in the Mussell patent. To be sure, the mechanical structure in each, as shown in the drawings, respectively, is not identical; but, in view of the fact that the same elements are for the same uses in each patent, it follows that, whatever invention or novelty may be claimed for the Mussell patent, it must be limited strictly and narrowly to the difference that may be found in the detailed construction of the various parts that go to make up the Mussell and Savage devices. This is plain, for in the Russell patent conception is clearly shown of two filling and supply heads, both so located as to communicate at different points with the vessel to be filled, and both capable of normally "acting simultaneously to supply beer and air to a keg or other receptacle." Further, we find set out in the Russell patent a conception of what seems to be the alleged novel idea set out in the Mussell patents, for Russell has provided for opposite openings in the receptacle to be filled, suitable connections therefor that may admit to or lead from said receptacle both beer and air. He has provided for and gives evidence in the patent of having conceived the uses which may be made of back pressure in the receptacle to be filled. He has further provided for a separate pipe leading to or from the similarly located openings in the receptacle. For these reasons, I consider the Russell patent a substantial anticipation of claim 1 of the Mussell patent No. 331,251.

The broadest permissible construction that can be put upon the claims of the Mussell patents in suit can relate only to the particular and specific construction of the various parts of the apparatus he has shown and described as being necessary to make use of the novel

ideas in this art of which, from the evidence, Russell must be considered the pioneer inventor. Referring to the cask or keg to be filled, Russell says in his patent: "This vat may be filled through the liquor aperture or the cock, C, an application which is recommended to brewers in particular, who find great advantage from starting in near the bottom of these vats, or it may be filled at the top by an open aperture or by a hose and screw cap." He also says that:

"The peculiar construction of my newly invented cock and its apparatus effectually shuts off all communication with the atmospheric air, except when the fluid is actually running into or out of the vessel; and in some cases the atmosphere may be entirely excluded, and only gas of the peculiar fluid or any other gas which may be desirable admitted."

From these quotations, and from the other provisions set forth in the specifications and claims of his patent, it is apparent that he had conceived the use to which back pressure could be put in filling casks with liquors, as well as means for producing and conveying to and from the cask the gas which should be used to create such back pressure, and means for conveying liquors to and from the cask. That these means used by Russell for the handling of the gas and liquors were not identical in their mechanical construction with those devised by Mussell and Savage is immaterial, as far as it may be considered in determining whether Mussell is entitled to have his patents construed broadly as pioneers in this art. The evolution of the principles involved in the Russell, Mussell, and Savage patents must be credited, from the evidence in the suit, to Russell. All that Mussell did was to make use of the principles and ideas shown in the Russell patent, and construct a device somewhat different in its detail from that used by Russell. The principle of operation of all these devices, therefore, was the same, Russell being the pioneer patentee in making use of these principles in this art, the Mussell and Savage patents must be construed narrowly in contemplation of the prior art.

Before we enter upon a consideration of the scope which shall be given to these device patents in suit, let us look for a moment to Matthews' method patent, No. 260,766, of July, 1882, to ascertain its effect upon the Mussell method patent, No. 331,252, upon which the complainant also relies. An inspection of this Matthews patent shows that it describes "a method of bottling liquid, or the like, under pressure, by which constant and uniform pressure is maintained upon the liquid as well when passing into the vessel to be filled as when in the reservoir from which it is taken." There is but one claim to this patent. It reads as follows:

"The method herein described of charging the fountain with aerated beverages by connecting it first with the reservoir that contains only gas under pressure, and then with another reservoir containing water and gas under greater pressure, meanwhile having the connection with the first reservoir uninterrupted, so that the fountain will first be charged with gas, and then with water under greater pressure than the gas, the water expelling surplus gas into the first reservoir, whereupon communication with both reservoirs is closed, substantially as specified."

This process relates primarily to, and was used chiefly in, charging soda water fountains. The complainants contend that such method

could not be considered as an anticipation of the Mussell method patent, because of the alleged difference between the art of filling casks with beer and the charging of fountains with soda water. They claim that there is not a sufficient analogy between these two arts or processes to permit of the view that the Matthews process is an anticipation of the Mussell process. They claim that the conditions under which beer and soda water are handled and treated, and the characteristics of the two liquids are so different, that the principles, methods, and devices that would apply to the handling of beer would not be applicable to the handling of soda water, and vice versa. They undertake to say that there are such differences between these two liquids and the methods that must be used in the handling that the principles and methods set forth in the Matthews patent of 1882 are not an anticipation of the Mussell method patent of 1885. My opinion is that such contention is not well founded, and that by the Matthews patent of 1882 the method shown and described in the Mussell patent 331,252 was clearly anticipated. The United States Patent Office classifies these two arts under the same division, and considers them not only as analogous, but as practically the same art. This is the view taken by the court. The difference between beer and soda water does not relate to, and is not found in, the different effects which back pressure will have upon them in the filling of casks with beer or fountains with soda water. Difference is found in the consistency of the liquid body of the beer and soda water, respectively; but inasmuch as we are not called upon in this suit to consider any chemical process, or to determine the difference between the chemical constituency of beer and water, it is evident that, whatever this difference may be, it has no bearing upon the questions involved in this litigation. Therefore, in considering the Matthews method patent with the Mussell method patent, no distinction can be permitted in point of the uses to which these methods are put, whether it be in the handling of soda water or the handling of beer. The point in each conception is the production of back pressure by gas within the cask or receptacle to be filled against the inflowing liquid. The Mussell method patent describes nothing more than that which is done in the Matthews method patent. Mussell does not specify that the inflowing liquid shall be received at the bottom or lower end of the receptacle to be filled, which is not specified in the Matthews patent; but means for this are shown and specified in the Matthews device patent, No. 260,037, June 27, 1882, which is prior to both the Mussell device and the method patent of 1885. Therefore there is no novelty in the Mussell method patent of 1885, the same being anticipated both in the method patent of Matthews, and means for such introduction of liquids being shown in the Matthews device patent, No. 260,037, of 1882. In reference to the Mussell device patent, No. 333,081, December 22, 1885, and the Savage device patent, No. 527,939, April 23, 1895, relied upon by the complainant, my opinion is that these patents, being based upon the principles embodied and shown in the first Mussell patent, are, of course, not pioneers in the art, and that they, as well as the first Mussell patent, in principle of construction, are anticipated by the English patent to

Russell, and that whatever consideration shall be given to them must be limited to the construction of the parts as they are shown and described, putting such limitation thereon as the state of the art, as shown in the Russell and Matthews patents, above referred to, requires. Claim 1 of the Mussell patent, No. 333,081, is the only one in this patent alleged to be infringed. It reads as follows:

"In an apparatus for filling kegs with a liquid containing carbonic acid or other gas in solution, the combination of the cask holding the liquid, situated above the keg to be filled, and joined thereto by a suitable tube and corking device, secured over an opening near the lower end of said keg, the relief vessel, situated above the keg to be filled, and connected thereto by a suitable tube and corking device, secured over an opening in the upper head of said keg, and the condensed air reservoir, connected both to the cask and relief vessel by proper tubing, all substantially as specified."

If there is any novelty in the device set forth in this claim, it is the corking device. Without going into details, we are convinced that the corking device described in this patent is not entitled to be called an invention, but is, rather, a mechanical equivalent for other different corking devices, well known in this art, and used publicly prior to the date of this patent. We therefore give a narrow construction to this claim, and hold that it is not proper ground on which to base a suit against the defendant herein.

In the Savage patent, No. 537,939, all claims are alleged to be infringed. They are as follows:

"(1) The combination with a supply-vessel for liquid, and a barrel or other package having a tape-valve and a vent-valve located at opposite points, and each being a feature of the barrel or package, and each having a gate to be opened or closed by connection therewith of a coupling-piece or other key, of a delivery-pipe from said supply-vessel, a coupling-piece to connect said pipe to said tape-valve, a cut-off for said coupling-piece, a pipe to receive and conduct gas or air from the barrel, a coupling-piece to connect the gas-pipe to said vent-valve, and a cut-off valve for said last-named coupling-piece, substantially as shown and described.

"(2) The combination with a supply-vessel for liquid, and a barrel or other package having a tape-valve and a vent-valve located at opposite points, and each being a feature of the barrel or package, and each having a gate to be opened or closed by connection therewith of a coupling-piece or other key, of a delivery-pipe from said supply-vessel, a coupling-piece to connect said pipe to said tape-valve, a cut-off for said coupling-piece, a pipe to return gas or air from the barrel to its source of supply, a coupling-piece to connect the return pipe to said vent-valve, and a cut-off valve for said last-named coupling-piece, substantially as shown and described.

"(3) The combination with a supply-vessel for liquid, and a barrel or other package having a tape-valve and a vent-valve located at opposite points, and each being a feature of the barrel or package, and each having a gate to be opened or closed by connection therewith or a coupling-piece or other key, of a delivery-pipe from said supply-vessel, a coupling-piece to connect said pipe to said tape-valve, a cut-off valve for said coupling-piece, a pipe to return gas or air from the barrel to its source of supply, a coupling-piece to connect the return-pipe to the vent-valve, a cut-off valve for said coupling-piece, and a trap-tank interposed in said return-pipe, substantially as shown and described.

"(4) The combination with a supply-vessel for liquid, and a barrel or other package having a tape-valve and a vent-valve located at opposite points, and each being a feature of the barrel or package, and each having a gate to be opened or closed by connection therewith of a coupling-piece or other key, of a delivery-pipe from said supply-vessel, a coupling-piece to connect said

pipe to said tape-valve, a cut-off valve for said coupling-piece, a pipe to return gas or, air from the barrel to its source of supply, a coupling-piece to connect the return-pipe to the vent-valve, a cut-off valve for said coupling-piece, a trap-tank interposed in said return-pipe, a delivery-pipe from said trap-tank, a coupling-piece adapted from connection to the tape-valve of a barrel, and a cut-off in said last-named delivery-pipe, substantially as shown and described."

Claim 2 differs from claim 1 in specifying the return of the gas or air to its source of supply. Claim 3 has an added element—the brass tank interposed in the air return pipe; and claim 4 specifies, in addition, a delivery-pipe and cut-off, the function of which is to draw the trap-tank into a barrel or package. From the file wrapper of the Savage patent, it appears that Savage originally claimed to have invented a method as well as an apparatus. It also appears that Savage later admitted that he was in error in claiming to have invented a method.

There was great difficulty experienced by Savage in obtaining a grant of this patent. Extracts from the correspondence between the Patent Office examiner and Savage show that the patent was allowed not for any broad invention, but only for details distinguished by valves and couplings, which Savage made no pretense of having invented. It is clear that Savage did not pretend to have invented any method of filling, or any new function of any different operation of any apparatus, or any of the elements enumerated in his claims. He only contended for a patent upon the ground that he was the first to provide couplings and cut-offs for the liquid and gas-pipes, by which he could detach a vessel after filling. He admitted that there was no other novelty. The study of the prior art shows clearly that these were the grounds on which his patent must have been allowed, and that as such it must be narrow and limited in its scope to these details of construction. This limitation applies to all four claims. The complainant's expert finds an embodiment of the claims of the Savage patent in the defendant's racker only when a broad interpretation is given to the claims of the Savage patent, and when capabilities which are not suggested in the specifications of the patent are read into the same. After a careful examination of the defendant's device and the Savage patent in suit, the court concurs in this view. To infringe the Savage patent, the defendant must have employed the specific mechanism and arrangement of elements described in the Savage specifications. This he does not do, and therefore it cannot be said that he is an infringer. The complainant's contentions in this case cannot be sustained. The device patents of Mussell and the device patent of Savage must all be construed narrowly, for the reasons stated. The method patent to Mussell is anticipated, as shown, because Russell gives evidence of having been the pioneer in the conception of the principles underlying both the Mussell and Savage device patents and the Mussell method patent; also because, when a narrow construction is put upon the Mussell and Savage patents, and a comparison is made of the claims of these patents with the defendant's device and process, it is not shown that the elements set forth in the complainant's patents are embodied in the defendant's device; nor is it shown that the process set forth in the complainant's patents is that under which the defendant's device operates.

Upon the whole case, we find that the defendant's device does not infringe any of the several claims of the patents enumerated and set out in the complainant's bill, and his bill must be dismissed.